UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA K. GARNEAU,

                        Plaintiff,

      v.                                                                    1:09-CV-1078 (LEK/RFT)

EMPIRE VISION CENTER, INC.,

                        Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Lisa K. Garneau ("Plaintiff"), a New York State resident, filed this action alleging federal and state law claims against Empire Vision Centers, Inc. ("Defendant" or "Empire"), a New York State corporation, on September 23, 2009. Dkt. No. 1. Presently before the Court is Defendant's November 17, 2009 Motion seeking dismissal of Plaintiff's three count Complaint in its entirety. Dkt. No. 9. Specifically, Defendant moves to dismiss Plaintiff's Americans with Disabilities Act ("ADA") claim pursuant to Federal Rule of Civil Procedure 12(b)(6); seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's Family and Medical Leave Act ("FMLA") claim; and, assuming dismissal of these federal claims is granted, moves for the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim brought under the New York Human Rights Law.

## II.  BACKGROUND

Plaintiff alleges that she worked for approximately three years as an optician in the employ of Empire prior to her termination, the subject of this action. Compl. ¶ 6. Plaintiff periodically suffers from cardiac arrhythmia, which involves a rapidly beating heart, fatigue and dizziness; the incidence of such episodes is "an erratic and random occurrence that rarely occurs during the course of the year." Compl. Ex. A ¶ 2. According to Plaintiff, her condition was known by Defendant, and "did not prevent her from performing the essential functions of her position, with or without accommodation." Compl. ¶¶ 8-9. On those occasions when cardiac arrhythmia incidents beset Plaintiff, they "last a short time . . . [and require] a short leave of absence until the condition passes." Compl. Ex. A ¶ 4.

On February 9, 2008, Plaintiff experienced a cardiac arrhythmia episode while on the job at Defendant's store in Niskayuna, New York. Plaintiff alleges that she informed the store manager of the episode and that no objection was made to her leaving; subsequently, on February 12, 2008, Plaintiff alleges that when she returned to work, the regional manager informed her that her action of leaving work constituted self-termination. Compl. Ex. A ¶¶ 4-5. At this time, Plaintiff contends that she denied ever having any intent to resign and explained that the store manager had been notified of her departure and its reasons. The regional manager "said he would get back to [her]." Id. ¶ 6. Thereafter, on February 20, 2008, Plaintiff received notice from Empire that she was terminated effective February 9, 2008. Id. ¶ 7.

Asserting that she had been discriminated against on the basis of her cardiac arrhythmia, Plaintiff proceeded to file charges with the Equal Employment Opportunity Commission, which ultimately resulted in a right to sue letter. Compl. ¶ 17; see also Ex. B. This instant action followed

2

within 90 days. Plaintiff sets forth three causes of action. First, she alleges her termination was an unlawful discriminatory practice in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. Compl. ¶¶ 19-24. Second, Plaintiff contends that the termination was an unlawful discriminatory practice in violation of the New York State Human Rights Law, New York State Executive Law § 296 *et seq*. Id. ¶¶ 25-28. Third, Plaintiff asserts that the termination violated the Family Medical Leave Act, 29 U.S.C. § 2601. Id. ¶¶ 29-35. Assorted compensatory and punitive damages, as well as costs and attorneys' fees, are sought.

**III.    ADA CLAIM**

When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party in its pleading as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Securities Litig., 503 F.3d 89, 95 (2d Cir. 2007). A party seeking dismissal of a pleading under Rule 12(b)(6) bears a heavy burden, as the question presented by such a motion is not whether the claimant is ultimately likely to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d. Cir. 1995) (internal quotation and citations omitted)). "In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the non-moving party's] claims across the line from conceivable to plausible.'" In re

Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570).

In reviewing a motion to dismiss a pleading for failure to state a claim, a court "may consider all papers and exhibits appended to the [pleading], as well as any matters of which judicial notice may be taken." Hirsch v. Arthur Andersen and Co., 72 F.3d 1085, 1092 (2d Cir. 1995); see Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). However, if a court considers materials other than those listed above, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 154-56 (2d Cir. 2006).

Plaintiff's first claim asserts that her termination resulted from discrimination by Defendant in violation of the American Disabilities Act. 42 U.S.C. § 12101 *et seq*. In order to establish a *prima facie* case of discriminatory discharge, which Plaintiff bears the initial burden of providing to prevail on her claim, she must show that: "(1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability." Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). In seeking dismissal of the ADA claim, Defendant must demonstrate as a matter of law that when the Court assumes as true Plaintiff's factual allegations and renders all reasonable inferences in her favor, Plaintiff is nonetheless unable to establish the necessary *prima facie* elements. The ADA Amendments Act of 2008, changed the threshold standard for determining whether an ADA plaintiff is disabled; however, the Amendments do not apply retroactively to ADA claims that arose before January 1,

2009, which is the case with Plaintiff's alleged discrimination. See, e.g., Lytes v. D.C. Water and Sewer Auth., 572 F.3d 936, 941 (D.C. Cir. 2009).

For purposes of consideration of the instant Motion, only the legal possibility of the second element of Plaintiff's *prima facie* case is subject to dispute -- whether Plaintiff suffers from a disability within the meaning of the ADA. The ADA defines "disability," with respect to an individual, as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). According to Plaintiff, "on or about February 2008 Plaintiff suffered from a disability as [] defined under the ADA and NYSHRL." Compl. ¶ 7. Thus, her claim proceeds under subsection (A) of § 12102(2) on the basis that she is alleged to be subject to a qualifying substantial impairment. Plaintiff, in her Complaint, makes no allegations that speak to subsections (B) or (C), such that there are no suggestions of a record of impairment or that Defendant regarded Plaintiff as disabled within the meaning of the ADA.[1]

In seeking dismissal, Defendant argues that Plaintiff's factual allegations describing the nature of her alleged disability negate the possibility that she actually has a disability within the meaning of the ADA. Def.'s Memo. at 4 (Dkt. No. 9). The Court follows a three-step inquiry for determining whether a plaintiff has a disability under subsection (A) of the ADA's definition, 42 U.S.C. § 12102(2). See Bragdon v. Abbott, 524 U.S. 624 (1988). First, a court determines

---

[1] Plaintiff, in her Response to Defendant's Motion, asserts a new "regarded as" argument which appears neither explicitly or implicitly within her Complaint. That is, there is no allegation that the Defendant perceived Plaintiff as having a qualifying disability under the ADA regardless of whether she in fact had such a disability; there is only the allegation that Plaintiff has a qualifying disability and that Defendant was aware of the disability. Accordingly, the Court shall not consider Plaintiff's newly-raised "regarded-as" argument in ruling on the instant Motion.

"whether the plaintiff suffered from a physical or mental impairment." Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998) (citation and quotations omitted).  Second, that court "identifie[s] the life activity upon which the plaintiff relie[s] and determine[s] whether it constitutes a major life activity under the ADA." Id.  Third, the court "inquire[s] whether the plaintiff's impairment substantially limited a major life activity identified in step two." Id.  A plaintiff must satisfy each of step of the inquiry in order to be considered disabled under subsection (A).  "The determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis." Reeves v. Johnson Controls World Servs., 140 F.3d 144, 151 (2d Cir. 1998).  In undertaking this inquiry, the Court is "guided by interpretations of parallel definitions in previous statutes and the views of various administrative agencies that have considered these questions." Colwell,158 F.3d at 641.

       Plaintiff sufficiently alleges an impairment under the ADA by asserting that she suffers from cardiac arrhythmia.  Under regulations issued by the Equal Employment Opportunity Commission, a "physical or mental impairment is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: . . . cardiovascular." 29 C.F.R. §1630.2(h)(1).  Thus, assuming the truth of Plaintiff's factual allegations, she suffers from a physical impairment of her heart that is cognizable under the first step of the Court's inquiry.

       Next, the Court turns to identify the activities alleged to be compromised by Plaintiff's condition and looks to whether her impairment may be found to affect major life activities.  "The term 'major life activity,' by its ordinary and natural meaning, directs [courts] to distinguish between life activities of greater and lesser significance." Reeves, 140 F.3d at 151.  "Major life

6

activities . . . refers to those activities that are of central importance to daily life." Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 197 (2002). The relevant Equal Employment Opportunity Commission regulations define major life activities as including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(h)(2)(i). It is not entirely clear from Plaintiff's Complaint what major life activity she relies on in asserting her claim. Nonetheless, making all reasonable inferences in Plaintiff's favor based on the allegations contained in her pleadings, the Court will assume that she has sufficiently indicated that her cardiac impairment affects on or more major life activities, particularly the activity of "working," as she alleges the need to cease working for a period of time after a cardiac incident. "If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered." C.F.R. Part 1630, App. § 1630.2(j).

This conclusion, however, reflects only the Court's reading of the Complaint and incorporated material. Plaintiff submitted material, including an affidavit by Plaintiff, in response to Defendant's Motion; critically, the Court has "two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment . . ." under Rule 56 and allow "all parties the opportunity to present supporting material." Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988). As the Court declines to convert the Defendant's Motion to dismiss, which rests on Plaintiff's pleadings, the Court will not consider the Plaintiff's submissions in opposition in ruling on the Motion to dismiss her ADA claim.

Lastly, the third step asks whether plaintiff's impairment imposes a substantial limitation on her ability to work, the major life activity previously identified. "This inquiry is individualized and fact-specific." Colwell, 158 F.3d at 643. It is at this step that Defendant contends Plaintiff's Complaint is self-defeating, in that her own factual allegations attest to the moderate, as opposed to substantial, impact of her condition and preclude the possibility of a meritorious ADA claim as a matter of law. The Equal Employment Opportunity Commission has promulgated regulations which guide courts' interpretation and application of the term "substantially limits" and provides specific instruction on the term's meaning in the context of impairment of the ability to work. See 29 C.F.R. § 1630.2(j); Ryan, 135 F.3d at 870. On this basis, "substantially limits" is defined as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

C.F.R. § 1630.2(j)(1). In determining whether a substantial limitation exists, the regulations further advise consideration of:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

C.F.R. § 1630.2(j)(2). With specific reference to the major life activity of working, it is stated that:

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity

of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

C.F.R. § 1630.2(j)(3).

As Defendant seeks to dismiss Plaintiff's ADA claim on her pleadings, the question presented is not whether her claim is likely to succeed but simply whether it plausibly states a claim; that is, the ADA claim will survive Defendant's Motion if her pleading, taken as true and with inferences made in her favor, contains a legally sufficient basis to warrant further litigation. See Patane, 508 F.3d at 111-12. Given this standard of review, Defendant's Motion faces a high hurdle. For Empire to establish that the third step fails as a matter of law, it must be shown that no set of facts consistent with Plaintiff's allegations could plausibly be introduced that would meet the definition of "substantially limits" outlined above. As explained, the Court shall not consider Plaintiff's additional submissions made in opposition to Defendant's Motion, including those containing new and expanded factual allegations.

In her pleadings, Plaintiff describes her cardiac condition with fairly minimal detail; while this brevity does not undermine her claim, it is the factual allegations that she does set forth

9

concerning the condition which necessarily require dismissal of her FMLA claims. In short, Plaintiff asserts facts which depict a condition that cannot possibly meet the threshold requirement of imposing a substantial limitation on a major life activity. She asserts that: "I suffer, periodically. from cardiac arrhythmia which on occasion causes me to become dizzy and lightheaded. This occurs when my heart beats faster and I become fatigued and dizzy. This is an erratic and random occurrence that rarely occurs during the course of the year." Compl. Ex. A ¶ 2. Additionally, she notes that: "These episodes last a short time and all I need if it occurs at work, is a short leave of absence until the condition passes." Compl. Ex. A ¶ 4. Plaintiff states that her "disability did not prevent her from performing the essential functions of her position, with or without an accommodation." Compl. ¶ 9. The foregoing allegations comprise the entirety of the depiction of the nature, severity, duration and impact of her of alleged  in her pleadings. Thus, broadly speaking, Plaintiff depicts an impairment that is moderate, infrequent, short in duration and does not significantly impact her work. Plaintiff's pleadings, as they are presently before the Court, are indeed self-defeating.

The pleadings simply do not suggest, and indeed expressly deny, that Plaintiff is unable to perform the major life activity of working or any other major life activity; similarly, Plaintiff's allegations indicate that she is not "significantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." C.F.R. § 1630.2(j)(1). Analysis of the C.F.R. § 1630.2(j)(2) factors for evaluating whether an impairment imposes a substantial limitation confirms that Plaintiff's pleading alleges a condition that, even read in the most generous possible light, falls well short of the definitional

threshold for her ADA claim.  Each factor strongly weighs against a finding that Plaintiff's particular case of cardiac arrhythmia substantially limits her ability to work; taken together, they are conclusive.

Plaintiff's pleadings assert that her condition produces the effects of dizziness, lightheadedness and fatigue on the occasions when it manifests.  These effects, according to Plaintiff, may require her to take a short leave of absence from work.  Thus, the pleadings indicate that the condition does, at least to some degree, interfere with the major life activity of working.  By her own admission, however, the nature of the impairment is not intrinsically severe with respect to the performance of her work; and, critically, the frequency of the condition's manifestation is described as rare.  Accordingly, the condition normally imposes virtually no restriction on Plaintiff's ability to work.  For this reason, the impairment is simply not one that "severely restricts the individual from doing activities that are of central importance to most people's daily lives."  See Toyota Motors Mfg., 534 U.S. at 198. (holding that to be substantially limited in performing manual tasks, a person's impairment must be permanent or long-term and severely restrict essential daily activities).

In this analysis, the term "duration" is the length of time an impairment persists, while the term "impact" refers to the residual effects of an impairment.  C.F.R. Part 1630, App. § 1630.2(j).  As Plaintiff has described it, the duration of the impairment further emphasizes the less than substantial limitations by her condition.  Not only is the manifestation of the impairment rare, but when it does occur, a brief absence is all that is alleged to be required to remedy the impairment.  The impairment is neither severe, as discussed above, nor is it protracted in duration.  While it is true that Plaintiff's condition is presumably lifelong, the actual time that the condition is alleged to

impair Plaintiff's work is quite limited based on the allegations of rare and short symptomatic periods. See Ryan, 135 F.3d at 871 (while "colitis is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation.").

Finally, there is no allegation of any residual effects of Plaintiff's impairment. Rather, she alleges that the episodes pass quickly, and that, as a general matter, her condition does not prevent her from performing her job, with or without an accommodation. Accordingly, the impact of Plaintiff's impairment is limited to those infrequent occasions when her symptoms manifest. "An individual is not substantially limited in a major life activity if the limitation, when viewed in light of the factors noted above, does not amount to a significant restriction when compared with the abilities of the average person." C.F.R. Part 1630, App. § 1630.2(j).  Plaintiff does not provide any indication that the impact of her condition might plausibly impose such a restriction.  A substantial limitation to the activity of working requires significant restriction of the ability "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." C.F.R. § 1630.2(j)(3).  Plaintiff's pleadings do not allege facts which might plausibly support her inability to perform the single, particular job that she had at Empire, much less make out a claim that her cardiac arrhythmia significantly inhibits her ability to work in a class or range of positions. See Watts v. IES Indus., No. C98-0045, 2001 U.S. Dist. LEXIS 10439 at *38-45 (N.D. Iowa Mar. 28, 2001) (holding the same).  As a matter of law, Plaintiff has failed to state an ADA claim for which relief may be granted.  Defendant's Motion to Dismiss Plaintiff's first claim is granted.

**IV.    FMLA CLAIMS**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing the judgment.'" Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). The nonmoving party "may not rely merely on allegations or denials in its own pleadings," as bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

In her third cause of action, Plaintiff asserts that Defendant committed various violations of the Family Medical Leave Act. Plaintiff alleges that she suffered from a disability on or about February 9, 2008 that required a temporary departure from Empire for medical attention, which led

13

to her termination on February 20, 2008. That termination, according to Plaintiff, violated the FMLA by: not affording "Plaintiff the benefit of a return to a comparable position upon her return from her convalescence for the temporary disability;" "not affording the Plaintiff the full allotment of unpaid leave as required by FMLA;" and "terminating the Plaintiff as a result of her exercising her rights under FMLA." Compl. ¶ 4. As a predicate matter, Plaintiff asserts that she worked at least twelve months in Defendant's employ and for at least 1,250 hours of service within that period, thus rendering her an eligible employee under the FMLA. Id. Defendant, however, contends that Plaintiff is not an eligible employee under the FMLA and seeks summary judgment on the basis of its demonstration of her ineligibility. See Def.'s Mem. at 7.

In striving to "balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons," Spurlock v. NYNEX, 949 F. Supp. 1022, 1032 (W.D.N.Y. Dec. 6, 1996), the FMLA affords certain protections, particularly 12 work-weeks of unpaid leave during any 12-month period for serious health conditions, to workers who fall within the scope of the Act, 29 U.S.C. § 2601; among the prerequisites to stating a claim under the FMLA, it is necessary that a plaintiff meet the definition of an eligible employee. Bulmer v. Yellow Freight Sys., 2000 U.S. App. LEXIS 11026, at *7 (2d Cir. May 16, 2000) ( "[E]ligibility is a threshold issue which has to be proved by plaintiff in order for him to be entitled to relief.."). In general, this term "means an employee who has been employed-- (i) for at least 12 months by the employer with respect to whom leave is requested under section 102; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). For purposes of calculating hours, the 12-month period within which the necessary hour must have been worked by Plaintiff are the 12 months immediately prior to the date that leave commences or is

sought by Plaintiff.  See 29 C.F.R. § 825.110.  To determine "whether an employee meets the hours of service requirement specified in subparagraph (A)(ii), the legal standards established under section 7 of the Fair Labor Standards Act of 1938 shall apply."  Id.  By way of the Fair Labor Standards Act, the FLSA excludes vacation, holiday pay, sick leave, and other pay for hours not actually worked from counting towards the 1,250 hours requirement.  See 29 U.S.C. §207(e)(2); Russell v. Verizon Communications Inc., 2007 U.S. Dist. LEXIS 16779, at *16 (W.D.N.Y. Jan. 30, 2007).

Defendant has submitted payroll records showing that, for purposes of eligibility under the FMLA, Plaintiff worked 1,239 hours in the 12 months prior to her leaving work on February 9, 2008.  See Dkt. No. 13, Att. 1.  As this number, while closely approaching the necessary minimum for eligibility to avail oneself of the protections of the FMLA, falls short of that requirement, Defendant argues that Plaintiffs FMLA-based claims fail as a matter of law.  In opposition, Plaintiff relies on assertions that her schedule during the relevant 12-month period had her work in excess of 1250 hours; reference is made in Plaintiff's Memorandum of Law to Federal Rule of Civil Procedure 56(f), indicating a desire for discovery concerning the authenticity of the payroll records currently proffered by Defendant.  Pl.'s Mem. in Opp. at 10 (Dkt. No. 12).

Defendant's submission come in the form of a Declaration by the Director of Human Resources for Empire and three accompanying exhibits, an employee earnings statement and two time-cards for certain pay periods. Dkt. No. 13. Att. 1.  The Declaration explains the meaning of abbreviated codes which denote classifications showing hours regularly worked versus paid time other than for such regular hours.  Id.  Using the employee earning statement and the time-cards that bookend the fiscal period contained in that statement, Defendant presents the number of qualifying

hours worked in the 12-month period prior to and including February 9, 2008. The resulting figure is 1,239 hours.

Conversely, Plaintiff maintains in an affidavit filed in opposition that: "I believe I have worked over the 1250 hours required under the FMLA. While I was a part-time worker I did work 33 hours per week, which counting for time off placed me over the 1250 hour threshold." Garneau Aff. at 1 (Dkt. No. 12). Her Response Memorandum, also argues that: "By multiplying [her 33 hour work week] by 50 weeks, taking into account her two weeks of vacation leave or other non-working time, she would have worked 1650 hours." Pl. Memo in Opp. at 10. Plaintiff lacks or no longer possesses records on this issue. Id. Thus, the Court is left to consider the documentary evidence submitted by Defendant and Plaintiff's denial based upon belief. As Defendant notes, Plaintiff does not contemplate "holidays, sick time, personal time, vacations and other variations in her schedule and other factors that affect actual hours worked." Def.'s Reply at 7. Her argument, predicated on the logic of scheduled hours, is therefore not responsive to the question of hours actually worked. It follows that the stated reason for Plaintiff's disbelief of the 1,239 hours total is unsound and cannot support her contention of falsity.

Based on the above, Defendant has met its burden of demonstrating that no genuine issue of material fact exists for trial on the FMLA by showing Plaintiff's ineligibility under the Act. In turn, Plaintiff has failed introduce evidence that would support her claim or "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus., 475 U.S. at 586. Nevertheless, Plaintiff makes an effort to extend the life of her FMLA claim by citing to Rule 56(f) in her Memorandum of Law. Specifically, she argues "that based upon her representations that she worked more hours than [the records] are reflecting and the fact that plaintiff has not had an

16

opportunity to do discovery, the veracity of these records pursuant to Federal Rule 56(f), decision on the FMLA [should be] deferred until further discovery can take place." Pl.'s Mem. in Opp. at 10.

Under Rule 56(f), a Court may decline to grant summary judgment if the non-moving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(f). In the Second Circuit, pursuant to Rule 56(f), a party claiming to be unable to produce evidence in opposition to a summary judgment motion must file an affidavit that demonstrates:

> 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful.

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985). "Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" National Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 117 (2d Cir. 2001) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)). While a "bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment, . . . a party against which summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'" Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009).

Little need be said on the inappropriateness of Rule 56(f) discovery in the present context. Clearly, Plaintiff has not made the necessary demonstration that summary judgment should be delayed or denied. Indeed, Plaintiff has not met a single required basis pursuant to the Rule.

Accordingly, Defendant's Motion for summary judgment on the FMLA claims is granted.

V.    **SUPPLEMENTAL JURISDICTION**

Given the Court's rulings dismissing Plaintiff's ADA and FMLA claims, the only remaining claim in this action is a state law claim under the New York Human Rights Law. Defendant asks the Court to decline to exercise supplemental jurisdiction over this claim in the absence of any federal claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). To decline jurisdiction is, in fact, the proper course at this point in the litigation. "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006). In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity - the "Cohill factors." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 347, 350 (2d Cir. 1988)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quotation and citation omitted). In view of the quite early stage of this action and no apparent countervailing considerations, Plaintiff's remaining state law claim is properly dismissed, as the Court declines to exercise supplemental jurisdiction over that cause of action.

## VI.  CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendant's Motion to dismiss and Motion for summary judgment (Dkt. No. 9) are **GRANTED**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's ADA claim is dismissed without prejudice; Plaintiff's FMLA is dismissed with prejudice; and Plaintiff's state law claim is dismissed without prejudice based on the absence of any federal claims before the Court; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:    July  01, 2010
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge